IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| M-B-W INC. and BARIKELL S.r.l., | ) ) ) | |
| Plaintiffs/Counterdefendants | ) ) | |
| v. | ) ) | |
| MULTIQUIP, INC. and ALLEN ENGINEERING CORPORATION, | ) ) ) | |
| Defendants/Counterclaimants | ) ) | CIVIL ACTION NO. 2:07-cv-00390-JPS |
| MULTIQUIP, INC. and ALLEN ENGINEERING CORPORATION, | ) ) ) | |
| Counterclaimants | ) ) | |
| v. | ) ) | |
| M-B-W INC. and BARIKELL S.r.l., | ) ) | |
| Counterdefendants | ) | |

**PLAINTIFF M-B-W INC.'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR COSTS AND EXPENSES, INCLUDING ATTORNEYS' FEES
AND EXPERTS' FEES/EXPENSES AND INTEREST**

I. ALLEN'S SUIT WAS FRIVOLOUS, FOLLOWED BY
   LITIGATION MISCONDUCT ................................................................................ 1

   A. Allen Admits Its Failure to Conduct Adequate
      Pre-Filing Investigation ............................................................................... 1

   B. Allen Misleads Concerning Law of Frivolousness ..................................... 2

   C. Allen Knew Its Patents Were Limited to Electric-Over-Hydraulic
      Control .......................................................................................................... 3

   D. Allen Knew or Should Have Known That M-B-W Did Not Use
      "Electric-Over-Hydraulic" Steering or a Hydraulic Rotor Drive ............. 4

   E. Conclusion ................................................................................................... 7

II. ALLEN OBTAINED THE PATENTS-IN-SUIT THROUGH
    INEQUITABLE CONDUCT .............................................................................. 7

    A. High Materiality ......................................................................................... 7

    B. Allen's Intent to Deceive the Patent Office is Properly Inferred ............. 9

       1. Allen Knew or Should Have Known of Mincher's Materiality ............ 11

       2. Allen Has Failed to Establish Evidence of Subjective
          Good Faith ............................................................................................. 11

III. ALLEN'S OBJECTIONS TO M-B-W'S REQUESTED AWARD
     ARE WITHOUT MERIT ................................................................................. 12

# TABLE OF CASES

Page(s)

Anderson v. Griffin,
    397 F.3d 515 (7th Cir. 2005) .................................................................................... 14

Armament Systems and Procedures, Inc. v. IQ Hong Kong Limited,
    546 F. Supp.2d 646 (E.D. WI 2008) ................................................................ 14, 15

Beckman Instruments, Inc. v. LKB Produkter AB,
    892 F.2d 1547 (Fed. Cir. 1989) .............................................................................. 9, 13

Brassler, U.S.A. I, L.P. v. Stryker Sales Corporation,
    267 F.3d 1370 (Fed. Cir. 2001) ................................................................................ 11

Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.,
    393 F.3d 1378 (Fed. Cir. 2005) .................................................................................. 1

Bruno Independent Living Aids v. Acorn Mobility Services, LTD.,
    394 F. 3d 1348 (Fed Cir. 2005) ............................................................................... 11

Cargill, Inc., v. Canbra Foods, Ltd.,
    476 F.3d 1359 (Fed. Cir. 2007) .................................................................................. 9

Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,
    120 F.3d 1253 (Fed. Cir. 1997) ............................................................... 8, 10, 11, 12

Eltech Systems Corp. v. PPG Industries, Inc.,
    903 F.2d 805 (Fed. Cir. 1990) .................................................................................... 2

Forest Labs, Inc. v. Abbot Labs,
    339 F.3d 1324 (Fed. Cir. 2003) .................................................................................. 2

Haynes Int'l Inc. v. Jessop Steel Co.,
    8 F.3d 1573 (Fed. Cir. 1993) ...................................................................................... 2

Hensley v. Eckerhart,
    461 U.S. 424, 103 S. Ct. 1933, 6 L. Ed.2d 40 (1983) ...................................... 13, 15

Highmark, Inc. v. Allcare Health Mgt. Sys., Inc.,
    2010 U.S. Dist. LEXIS 31798 (N.D. TX 2010) ....................................................... 1

ICU Medical, Inc. v Alaris Medical Systems, Inc.,
    558 F.3d 1368 (Fed. Cir. 2009) .................................................................................. 2

In re General Motors Corp.,
    110 F.3d 1003 (4th Cir. 1997) .................................................................................. 14

Li Second Family Ltd Partnership v. Toshiba Corp.,
    231 F.3d 1373 (Fed. Cir. 2000) ............................................................................... 9

Mathis v. Spears,
    587 F.2d 749 (Fed. Cir. 1988) ................................................................................ 15

McKesson Information Solutions, Inc. v. Bridge Medical, Inc,
    487 F.3d 897 ( Fed. Cir. 2007) ................................................................................ 9

Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.,
    200 F.3d 518 (7th Cir. 1999) ................................................................................. 14

Metarante Corporation v. Emigrant Savings Bank,
    2009 U.S. Dist. LEXIS 119054 (E.D. WI 2009),
    aff'd. ___ F.3d ___, 2010 U.S. App. LEXIS 18107 (7th Cir. 2010) ................... 14

Microstrategy Incorporated v. Chrystal Decisions, Inc..,
    586 F. Supp.2d 256 (D. DE 2008) ......................................................................... 13

Praxair, Inc. v. Atmi, Inc.,
    543 F.3d 1306 (Fed. Cir. 2008) .................................................................. 8, 9, 10, 11

Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.,
    537 F.3d 1357 (Fed. Cir. 2008) ............................................................................. 10

Sunbeam Products, Inc. v. Homedics, Inc.,
    2010 U.S. Dist. LEXIS 61290 (W.D. WI 2010) ................................................... 14

Takeda Chem. Indus., Ltd. V. Mylan Labs, Inc.,
    549 F.3d 1381 (Fed. Cir. 2008) ............................................................................... 2

## I. ALLEN'S SUIT WAS FRIVOLOUS, FOLLOWED BY LITIGATION MISCONDUCT

The opposition (Dkt. #178) submitted by J. Dewayne Allen and his company, Allen Engineering Corporation (hereafter jointly and severally "Allen") provides further evidence that this case is "exceptional" under 35 U.S.C. § 285 and the inherent power of this Court.

### A. Allen Admits Its Failure to Conduct Adequate Pre-Filing Investigation

Allen's opposition clearly admits that Allen failed to conduct an adequate good faith pre-filing investigation into the scope of Allen's patent claims and the structure and operation of the accused M-B-W/Barikell ride-on trowel (Dkt. #178, p. 14 of 36, L7-8, 12-13).

According to Allen's opposition (Dkt. #178, p. 13 of 36), Allen filed suit alleging infringement of Allen's patents-in-suit based only on Mr. Allen's viewing of the accused M-B-W/Barikell trowel from "the aisle in the booth at a distance of ten to fifteen feet" where he allegedly "could not tell whether the trowel used electric circuits." Even if such assertion of only one inspection were true, which of course it is not (as discussed below), such alleged pre-filing investigation is wholly inadequate and justifies the award of expenses and fees in this case,[1] Highmark, Inc. v. Allcare Health Mgt. Sys., Inc., 2010 U.S. Dist. LEXIS 31798, *14, fn. 3 (N.D. TX 2010); citing, Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381

---

[1] Allen's history set forth in Section B of Allen's Opposition (Dkt. #178, pp. 8-11) glaringly omits any discussion of Allen's pre-filing investigation occurring prior to January 17, 2008 when the ill-begotten claims alleging infringement of the Allen patents-in-suit were filed with this Court. Atty. Baish has waived the attorney-client privilege and/or work product exemption by factually testifying concerning his communications with Mr. Allen and Allen's technical expert, Dr. Tullis (see, ¶¶6 and 7 of Baish Declaration). Yet, Atty. Baish is totally silent concerning the facts behind Allen's pre-filing investigation as to whether there was a reasonable basis for asserting the Allen patents-in-suit against M-B-W. Both Atty. Baish and Atty. Howard A. Pollack (both with the law firm of Godfrey & Kahn, S.C.) first appeared in this lawsuit on January 17, 2008 as attorneys for the defendant, Multiquip, Inc. (Dkt. #17). On January 17, 2008, Attys. Baish and Pollack signed off on an Answer and Counterclaim alleging infringement of the three Allen patents-in-suit (Dkt. #21). Also on January 17, 2008, Attys. Baish and Pollack signed off on a motion to join Allen Engineering Corporation as a counterclaimant (Dkt. #22). Yet, while waiving privileges and exemptions, Atty. Baish in his Declaration totally fails to set forth any fact involving his discussions with Mr. Allen or anyone else concerning any pre-filing investigation about the appropriateness of pleading the Allen patents-in-suit.

(Fed. Cir. 2005) [conduct that justifies exceptional case finding includes "conduct that violates Fed. R. Civ. P. 11, or like infractions"].

B. **Allen Misleads Concerning Law of Frivolousness**

Allen's presentation of the law regarding frivolous lawsuits is misleading, at best. Allen argues that "in some particularly egregious circumstances, proof of objective baselessness will be deemed sufficient proof of subjective bad faith, but such cases are rare," (Dkt. #178 at 7). To the contrary, courts are *often* willing to treat a showing of baseless litigation as sufficient to prove bad faith and sufficient to support an award of fees under § 285, Eltech Systems Corp. v. PPG Industries, Inc., 903 F.2d 805, 811 (Fed. Cir. 1990);[2] Haynes Int'l Inc. v. Jessop Steel Co., 8 F.3d 1573, 1579 (Fed. Cir. 1993); Forest Labs, Inc. v. Abbot Labs, 339 F.3d 1324, 1330 (Fed. Cir. 2003); Takeda Chem. Indus., Ltd. V. Mylan Labs, Inc., 549 F.3d 1381, 1387-88 (Fed. Cir. 2008). Naturally, where the patentee was manifestly unreasonable in asserting infringement because no reasonable litigant could expect success on the merits of the suit, courts are willing to assume bad faith litigation, Eltech, 903 F.2d at 811.[3] Likewise, when the patentee cannot articulate a viable infringement theory, claims by a patentee that it was only "guilty of mere error" in assessing infringement are not sufficient to justify the filing or maintenance of an action, Id.

---

[2] The two factors of (1) bad faith and (2) whether a suit is objectively baseless are often inseparable, as proof of objective baselessness is the first step in, and often sufficient for, proving bad faith, Eltech Systems Corp. v. PPG Industries, Inc., 903 F.2d 805, 811(Fed. Cir. 1990) ("[a] frivolous infringement suit is one in which the patentee knew or, on reasonable investigation, should have known, was baseless"), *see also*, ICU Medical, Inc. v Alaris Medical Systems, Inc., 558 F.3d 1368, 1379 (Fed. Cir. 2009).

[3] Eltech is prevalently cited regarding the legal standard for frivolous lawsuits. Shepard's® data conveys that 70 federal cases cite Eltech for the premise that "the filing and maintaining of an infringement suit which the patentee knows, or on reasonable investigation should know, is baseless constitutes grounds for declaring a case exceptional under 35 U.S.C. § 285 and awarding costs, attorney fees, and expenses to the accused infringer."

### C. Allen Knew Its Patents Were Limited to Electric-Over-Hydraulic Control

Allen argues that its infringement claims were not frivolous because it did not know at the time of filing that its patents were limited to electric-over-hydraulic control. Nonsense. Allen and its attorney, Frank Dykas, knew at the time of filing that the Allen patents-in-suit were limited to electric-over-hydraulic control because Atty. Dykas explicitly recognized the limitations in two separate letters.

On June 8, 2000, Attorney Dykas ("Dykas")[4] informed Allen in a letter (the "2000 letter") that Allen's '833 patents and its '660 patents were limited to trowels with electric-over-hydraulic control (Ex. E - Dkt. #151-6: Ex. 204; *see also*, Ex. P - Dkt. 172-16: Allen 12/16/08 Dep. at 60-61).[5]

Further, in an August 8, 2007 letter (the "2007 letter") to M-B-W's attorney, Atty. Dykas undoubtedly recognized the Allen patents as being of the "electric over hydraulic type," as opposed to the Multiquip patent which is of the "pure hydraulic type" (Ex. 106: Dkt. #164-7, pp. 2-3)[6]

Based on the letters, there is no doubt that both Mr. Allen and Atty. Dykas knew at the time of filing this suit that the Allen Patents did not infringe. Allen's arguments to the contrary is misleading and far fetched. The 2000 letter unmistakably asserts that all of the independent claims of the '833 patent and the '660 patent are limited to electric-over-hydraulic control and is unarguably an admission by Atty. Dykas, the attorney of record for Allen at the time of filing

---

[4] At that time, Dykas was representing Whiteman Industries -- a company with a hydraulic-over-hydraulic steering trowel (like M-B-W /Barikell's), against Allen's accusation of infringement of Allen's '833 and '660 patents (Id.; *see also,* Ex. P - Dkt. #172: Allen 12/16/08 Dep. 59).

[5] "[C]laims 7 and 9 include 'electric over hydraulic power steering' as important elements of the claims," and claims 1 and 4 are means plus function claims limited to "solenoid controls" for the hydraulic systems. Further, Dykas concluded that "[t]he same analysis applies" to the '660 patent (Dkt. #151-6 - Ex. E; *see also,* Ex. P. - Dkt. #172: Allen 12/16/08 Dep. at 60-61)

[6] "You may not be aware that Allen Engineering holds numerous patent on power steering control systems, for ride-on power trowels, of the electric over hydraulic type. Multiquip holds Patent No. 5,816,740 for the pure hydraulic type power steering control system" (Ex. 106: Dkt. #164-7)

this case, that on or before June 8, 2000 Dykas knew that the Allen patents were limited to electric-over-hydraulic controls.

Allen further argues regarding the 2000 letter that there is no evidence that Allen or Dykas remembered the letter at the time they filed this action (Dkt. #177 at 12). However, neither Dykas nor Allen ever testified that they forgot about the 2000 letter.[7] Indeed, the letter would be hard to forget since it expressed Atty. Dykas' assessment of the Allen patents and since it led up to the license agreement between Allen and Multiquip mentioned in the 2007 letter.

Allen's argument that the letters represent Dykas' "off the top of one's head views" is ridiculous (Dkt. #178 at 11-12). Letters to opposing counsel regarding assertions of patent infringement are not a forum for offhand remarks. Instead, the letters express Dykas' studied assessment of the Allen patent limitations.

Thus, Atty. Dykas, who had previously analyzed the patents and determined their limitations, and Mr. Allen, the first named inventor and supposed expert on the Allen patents, and cannot legitimately claim ignorance as to the patent limitations. However, even if Allen and Dykas did have doubts regarding the limits of the patents -- which is hard to believe considering the evidence -- then Allen had an obligation to seek advice of competent patent counsel before asserting its patents.

### D. Allen Knew or Should Have Known That M-B-W Did Not Use "Electric-Over-Hydraulic" Steering or a "Hydraulic" Rotor Drive

Allen falsely states to this Court that the only pre-filing review of the accused M-B-W/Barikell trowel occurred when Mr. Allen saw the trowel at the 2007 World of Concrete

---

[7] In fact, when presented with the letter at deposition, Allen testified, that he recognized the letter (Ex. P - Dkt. #172: Allen 12/16/08 Dep. at 59:1-6) and that in the letter Dykas states "that the hydraulic over hydraulic controls of the Whiteman systems do not infringe the electric over hydraulic claims of the '833 patent" (Id. at 60:1-6).

- 4 -

Show.[8] Such misrepresentation is directly contradicted by Allen's inspection of the accused M-B-W/Barikell trowel at United Rental in Louisville, Kentucky in or about May 2007, about three months before Allen sent its August 8, 2007 cease and desist letter to M-B-W and more than seven months before Allen filed the counterclaims asserting the three Allen patents-in-suit.[9]

Further pre-filing review was conducted when Mr. Allen reviewed M-B-W/Barikell's operation and parts manual. Allen falsely accuses M-B-W of misrepresenting the record relative to Mr. Allen's review in 2007 of M-B-W's online parts manual (Dkt. #178, p. 13). However, it is Allen that is misrepresenting the record. Mr. Allen testified that he spoke with Mr. Euliss (President of Multiquip) at the World of Concrete Show in January 2007 (Dkt. #172-16, pp. 12-13). He testified that he reviewed the M-B-W operation and parts manual "later that year" (Dkt. #172-16, pp. 13-14), and found that the M-B-W trowel "did not demonstrate an electric circuit" (Dkt. #172-16, p. 10).

---

[8] Allen misrepresents to the Court (Dkt. #178, p. 14 of 36):

> "By the time Allen Engineering introduced its claim, then, it did so without the benefit of actually inspecting the MBW trowel, but rather on the basis of Allen's observations at the 2007 tradeshow."

This statement is absolutely false. Allen fails to advise this Court that an accused M-B-W/Barikell hydraulic-over-hydraulic ride-on trowel had been placed on consignment with United Rental located in Louisville, Kentucky in or about May of 2007. Allen suppresses from the Court that Allen's employee, Richard Horner, an NRMCA certified Pervious Concrete Technician, performed an inspection and took numerous pictures of the accused M-B-W/Barikell trowel. Mr. Horner's report, including pictures, was forwarded to Mr. Allen (Ex. O - Dkt. #164-1: Allen_MBW-00856-859). Such undisputed fact was clearly set forth on page 8 of M-B-W's Memorandum (Dkt. #173 filed on 08/17/10), yet totally ignored in Allen's opposition. Mr. Horner (Allen's employee) reported to Mr. Allen: "If you need anymore let me know." (Dkt. #164-1, p. 2 of 5)

Allen thus had full access and completely inspected the accused M-B-W/Barikell trowel in or about May 2007. If Allen needed additional information, all it had to do was conduct a follow-up with its employee, Mr. Horner.

[9] Strangely, Allen's opposition contends that it did not have enough information to determine infringement until the inspections at Slinger, Wisconsin in July 2008. Such contention not only constitutes an admission that Allen's pre-filing investigation was inadequate, but is also specious because of Allen's Louisville inspection in or about May 2007, where Allen took numerous pictures of the accused M-B-W/Barikell trowel.

- 5 -
Case 2:07-cv-00390-JPS   Filed 09/21/10   Page 9 of 19   Document 181

Further evidence of bad faith is Mr. Allen's admitted pre-suit assumption that the accused M-B-W/Barikell trowel used a mechanical drive to power the rotors rather than a hydraulic motor based upon Mr. Allen's personal inspection of the accused M-B-W/Barikell trowel at the January 2007 World of Concrete Show in Las Vegas (Ex. P - Dkt. #172-16: Allen 12/16/08 Dep., pp. 19-20). Yet, based on the assumption that the accused M-B-W/Barikell trowel did not use a hydraulic drive motor to power the rotors, Allen proceeded in bad faith to file its ill-begotten suit on January 17, 2008 alleging infringement of the Allen U.S. 6,106,193 patent wherein all claims are limited to "hydraulic motors."

Further evidence of bad faith of Allen is shown by Atty. Jochman's (M-B-W's counsel) phone conference with Allen's counsel (Atty. Dykas) on or about August 22, 2007. Atty. Dykas stated that M-B-W/Barikell did not infringe Allen's patents. Such admission was memorialized in Atty. Jochman's letter to Atty. Dykas dated August 24, 2007 (Ex. 108 - Dkt. #165-2, p. 2 of 2). Atty. Dykas never responded. When confronted at deposition, Atty. Dykas testified that he told M-B-W's counsel (Jochman) during the August 22, 2007 phone conference that "... We didn't have any issues at that time with Allen's patents" (Dykas 08/21/08 Dep., pp. 98-100). Yet, previously, on August 6, 2007, Mr. Allen entered a Joint Defense Agreement (Ex. C - Dkt. #131: Ex. 139) where Allen agreed to assert the three Allen patents-in-suit against M-B-W (*see*, second and fifth WHEREAS clauses).[10] Allen proceeded to file its ill-begotten suit in bad faith on January 17, 2008 alleging infringement of the Allen patents-in-suit (Dkt. #21).

Further evidence of Allen's bad faith lies in its refusal to have a meeting with M-B-W and its counsel to minimize litigation expense and to avoid any unnecessary burden on the Court.[11]

---

[10] Mr. Dykas not only participated in the conversation with Messrs. Allen and Euliss, but also in drafting the Agreement.

[11] This is the reason why M-B-W delayed serving its declaratory judgment suit based on hopes of amicably resolving the matter. Specifically, M-B-W submitted requests for meetings with Allen, as expressed in Atty. Jochman's August 22, 2007 letter (Dkt. #172: Ex. S) and September 16, 2007 letter

Any early settlement meeting would have been inconsistent with Allen and Multiquip's intent to eliminate M-B-W/Barikell from the U.S. hydraulically steered ride-on trowel market.

E. **Conclusion**

Clear and convincing evidence shows that Mr. Allen and the Allen attorneys knew that the accused M-B-W/Barikell trowel did not infringe the Allen patents-in-suit before Allen's patent infringement claims were filed. Even if Allen's belatedly submitted conclusory unsworn arguments of counsel alleging lack of knowledge prior to January 17, 2008 which, of course, is untrue, Allen would still be guilty of bad faith in failing to conduct an appropriate pre-filing investigation which, in itself, is sufficient to render the case "exceptional," justifying a full award of M-B-W's full expenses, including attorneys' fees.

II. **ALLEN OBTAINED THE PATENTS-IN-SUIT THROUGH INEQUITABLE CONDUCT**

A. **High Materiality**

Allen admits that the Mincher patent was "material" under the definition of materiality in the USPTO rules (Allen's Brief, Dkt. #178, p. 24 of 36); 37 C.F.R. § 1.56.

However, Allen commits error by failing to recognize that the Mincher U.S. 2,869,442 ("Mincher") patent was "highly" material. First, according to the PTO's definition of materiality, Mincher is material because "[i]t refutes, or is inconsistent with, a position the applicant takes in opposing an argument of unpatentability [and] asserting an argument of patentability," 37 C.F.R. § 1.56.[12] Second, Mincher discloses a key feature contributing to the novelty of the Allen patents -- a hydraulically steered ride-on trowel.

---

(Dkt. #172: Ex. T). Allen failed to respond, thereby refusing to meet with M-B-W (Dkt. #172: Ex. K - Dykas Dep., pp. 96-98).

[12] Allen misstates the law regarding the controlling PTO definition of materiality. M-B-W is unsure what Allen meant in footnote 10, where Allen states that "these rules were not in effect when the '833 patent was filed ... ." Allen, again, makes a misstatement when it says that the current Rule 56 was not in effect. The current version of Rule 56 has been in effect since 1992. Allen was certainly subject to that version of the rule at the time of filing the '833 patent, since the '833 patent was filed on Jan, 15, *1997*.

The Federal Circuit has roundly rejected Allen's argument (Dkt. #178, p. 25 of 36) that a prior art reference lacks materiality because it does not disclose a substantially similar or substantially equivalent invention, Critikon, 120 F.3d at 1258; Praxair, 543 F.3d at 1314.

Allen's argument is factually misleading because it ignores the quintessential fact that Mincher discloses a key feature contributing to the novelty of the Allen Patents -- a ride-on trowel with hydraulic steering. The prosecution history of the '833 patent makes clear that both the Patent Examiner and Allen's patent counsel (Carver) thought that the hydraulic steering control was an important point of novelty of the Allen patents.[13] Dr. Garris and Mr. Manbeck both opined that Mincher, in combination with Allen '220 patent and/or other references, would have formed the basis of obviousness rejections on claims of all of the Allen Patents (Dkt. #170: Garris Decl., ¶¶180-193, 211-213; Dkt. #174: Manbeck Decl., ¶¶51-61),[14] Praxair, Inc. v. Atmi, Inc., 543 F.3d 1306, 1315-16 (Fed. Cir. 2008) [RFOs were highly material in the context of four statements made in the course of the '115 prosecution."] [15]

---

Both the PTO rule and the case law in effect on that filing date make clear that disclosures relevant to arguments made during prosecution are material, see, e.g., Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 120 F.3d 1253, 1257 (Fed. Cir. 1997).

[13] Dep. Ex. 6; MBW 000417-000420; Manbeck Decl., ¶56. Allen falsely stated to the USPTO:
"... there is no known prior art hydraulically steered riding trowel, ..."
\*\*\*
"... not a single hydraulically steered prior art trowel was cited (or apparently exists)."
\*\*\*
"It is thus believed that the scope and contents of the prior art is devoid of pertinent hydraulic systems for steering trowels."
\*\*\*
"... the pertinent trowel classes in the classification system, ... is devoid of prior art hydraulically steered trowels."
(Dep. Ex. 6; MBW 000417-000420; Manbeck Decl., ¶56).
Also note that the factual relevance of Mincher applies equally to the other two of the Allen Patents, since they depend from the '833 patent.

[14] It is uncontested that Mincher discloses a hydraulically steered ride-on trowel. Allen's expert, Dr. Tullis, testified that Mincher discloses a hydraulically steered trowel providing a hydraulic circuit with a pump, control valves and hydraulic cylinders.

[15] See, 37 C.F.R. 1.56(b); Critikon, 120 F.3d at 1257 (Fed. Cir. 1997).

- 8 -

Allen's contention that Mincher has not played into patentability of other unnamed and/or unrelated applications bears no relevance to how Mincher affects patentability of the '833 application or its progeny, Li Second Family Ltd Partnership v. Toshiba Corp., 231 F.3d 1373, 1380 (Fed. Cir. 2000); Cargill, Inc., v. Canbra Foods, Ltd., 476 F.3d 1359 (Fed. Cir. 2007) ["the test for materiality is whether a reasonable examiner would have considered the information important, not whether the information would conclusively decide the issue of patentability"]; *see also*, Beckman, 439 F.2d at 1380 [The determination of whether prior art renders an application obvious, or otherwise unpatentable, should be left to the Patent Office rather than being decided privately by the parties].

Not only does Mincher disclose a key feature contributing to the novelty of the Allen Patents -- a hydraulically steered ride-on trowel -- it also refutes a position taken by Allen during the prosecution of the Allen Patents, which makes it "highly" material.

### B.     Allen's Intent to Deceive the Patent Office is Properly Inferred

Allen fails to distinguish, or even mention, the long line of controlling cases including Praxair, Inc. v. Atmi, Inc., 543 F.3d 1306, 1313-14, 1315 (Fed. Cir. 2008), which hold that an inference of intent is appropriate when "(1) highly material information is withheld; (2) the applicant knew of the information and knew or should have known of the materiality of the information; (3) the applicant has not provided a credible explanation for the withholding," McKesson Information Solutions, Inc. v. Bridge Medical, Inc, 487 F.3d 897, 902 ( Fed. Cir. 2007); ("[w]ith regard to the issue of intent, the law recognizes that deceptive intent is virtually never shown or disproved by direct evidence. Instead, the ultimate fact finding on the issue depends on assessment of all the inferences, favorable and unfavorable, that can be drawn from pertinent evidence").

Allen's reliance on Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1365-66 (Fed. Cir. 2008) is misplaced, because Star Scientific reiterates the well-accepted premise that "high" materiality lowers the level of intent required to establish inequitable conduct, Id. at 1367, and "intent can be inferred from indirect and circumstantial evidence," Id. at 1366. While "direct evidence of deceptive intent is rarely available," circumstantial evidence taken from the prosecution history and inferences drawn from the level of materiality in this case clearly prove that Allen's intentional omission of Mincher is the "single most reasonable inference," Id. The specific facts are explicitly set forth in the Declaration (Dkt. #174) of Mr. Manbeck (former Commissioner of Patents, and Chief Patent Attorney for General Electric for about 25 years), and Dr. Garris (Dkt. #170) (distinguished engineering professor from The George Washington University).

Allen has totally ignored that the Federal Circuit's decision in Praxair was decided after Star Scientific. Allen fails to read Star Scientific in context with Praxair. Indeed, "a patentee facing a high level of materiality and clear proof that it knew or should have known of that materiality, can expect to find it difficult to establish 'subjective good faith' sufficient to prevent the drawing of an inference of intent to mislead," Praxair, 543 F.3d at 1314 (quoting Critikon, 120 F.3d at 1257).

Allen has failed to establish *any* evidence of subjective good faith. Mr. Manbeck opined that "there is evidence supporting a reasonable inference that Stephen D. Carver (Allen's patent counsel) possessed an intent to deceive and/or mislead the PTO by not citing the Mincher '442 patent during the prosecution of the Allen '833, '660, and '193 patents because citing Mincher would have jeopardized, if not prevented, the allowance of certain claims in those patents" (Dkt. #174 - Manbeck Decl., ¶75).

## 1. Allen Knew or Should Have Known of Mincher's Materiality

Mr. Manbeck's Declaration sets forth detailed facts obtained from Patent Office records that Allen knew of Mincher during the relevant time (Dkt. #174 - Manbeck Decl., ¶¶43-75).

Allen has never denied that he knew of Mincher during the time of filing and prosecution of the Allen patents-in-suit. To the contrary, Allen's patent attorney (Carver) testified that "[he] didn't think it was relevant at the time" (Dkt. #174 - Manbeck Decl., ¶77). However, a mistake about the relevance of Mincher is not a legitimate reason for not citing the reference to the USPTO in light of the fact that it was highly material. The Federal Circuit's decision in Praxair, and a long line of cases including Critikon, makes clear that alleged ignorance about relevance is not a legitimate explanation for failing to disclose highly material art, Praxair, 543 F.3d at 1315-17; Critikon, 120 F.3d at 1256. Allen's alleged "failure to appreciate the legal significance of the facts that it failed to disclose did not absolve it of its duty to disclose," Brassler, U.S.A. I, L.P. v. Stryker Sales Corporation, 267 F.3d 1370, 1376 (Fed. Cir. 2001). Allen knew, or should have known, that Mincher was material.

## 2. Allen Has Failed to Establish Evidence of Subjective Good Faith

Allen has not offered any good faith explanation for why Mincher was never disclosed during the prosecution of the Allen patents-in-suit. Instead, Allen has offered nothing more than conflicting and conclusory statements that the reference was not relevant, cumulative, invalid, etc. (Dkt. #174 - Manbeck Decl., ¶¶76-79). For example, Atty. Carver states that "I didn't think it was relevant at the time" (Manbeck Decl., ¶77). Then, barely two short questions later, Atty. Carver states, "And I don't believe we're obligated because of cumulative art to disclose everything over and over again," (Manbeck Decl., ¶77). Yet, Allen fails to identify any prior art which it thought was cumulative, see, Bruno Independent Living Aids v. Acorn Mobility Services, LTD., 394 F. 3d 1348 (Fed Cir. 2005).

"A mere denial of intent to mislead (which would defeat every effort to establish inequitable conduct) will not suffice in such circumstances," Critikon, 120 F.3d at 1257. Though Allen's opposition brief makes much of Atty. Carver's claim that "[he] didn't think it was relevant at the time," Allen supplies no credible reason for its irrelevance. The inappropriateness of the numerous after-the-fact excuses of Allen for not citing Mincher are set forth in M-B-W's moving brief (Dkt. #149, pp. 17-19).

### III. ALLEN'S OBJECTIONS TO M-B-W'S REQUESTED AWARD ARE WITHOUT MERIT

Allen has raised a plethora of trivial objections concerning billing matters. Allen appears to object to what it describes as over-staffing on M-B-W's part, and general inefficiencies in M-B-W's submission. It further raises objections to certain charges for M-B-W's expert witnesses.

Allen admits that M-B-W was the "prevailing party" involving the three Allen patents-in-suit. However, Allen overlooks the fact that this case involved high stakes concerning whether or not M-B-W could enter the U.S. market with a hydraulically steered riding (e.g., ride-on) trowel. Such market had been monopolized by Allen and Multiquip, who had cross-licensed the patents-in-suit to control 100% of the market. As a practical effect, M-B-W has prevailed with respect to the entire case in that it has secured the right to continue marketing the accused M-B-W/Barikell trowel in the U.S. market. However, M-B-W is only seeking an award of a portion of its fees and expenses which reasonably relate to the Allen patents-in-suit.

Allen totally ignores that M-B-W did not include in its claim for reimbursement those fees and costs prior to August 8, 2007 and between December 19, 2008 and January 3, 2010, which relate to the allegations concerning the Multiquip '740 patent. Allen's misleading comments concerning the summary judgment motions involving the Multiquip '740 patent ignore

that such motions were filed and briefed after December 18, 2008, and therefore were not included in M-B-W's claims for fees and expenses.

Thus, M-B-W's claim for 91.3% is not applied to all of M-B-W's fees and expenses. Further, M-B-W's methodology is not "contrived and wholly unrealistic," but is based on a common core of facts and/or related legal issues that are involved in this case, Microstrategy Incorporated v. Chrystal Decisions, Inc.., 586 F. Supp.2d 256 (D. DE 2008) [awarding 5/6 of the fees and costs based on a ratio involving the number of patents and number of patent claims asserted in bad faith], citing Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547 (Fed. Cir. 1989) and Hensley v. Eckerhart, 461 U.S. 424, 103 S. Ct. 1933, 6 L. Ed.2d 40 (1983).[16]

Allen has chosen not to produce its own billing records, or to disclose the billing rates, fees and expenses that Allen has incurred in bringing and maintaining its frivolous lawsuit based on Allen's patents obtained through inequitable conduct.[17] The inference to be drawn, naturally, is that Allen's own fees and expenses were similar to or higher than those now sought by M-B-W.[18] Determining the reasonableness of fees is always a contextual exercise, and in a complex patent case like this one, the probative value of Allen's own billings is at a premium; as

---

[16] Allen seeks a blanket percentage reduction because, in some cases, it cannot tell whether the fees sought pertained to the twenty-three asserted claims in the three complicated and lengthy Allen patents-in-suit, or whether they relate to the two asserted claims in the single Multiquip patent-in-suit (which is only a few pages in length). Allen ignores that the Allen patents-in-suit and the one Multiquip patent-in-suit shared a common core of facts and/or related legal issues (*see*, Solveson Second Declaration submitted herewith), Microstrategy, 586 F. Supp.2d at 261-262.

[17] The point is not just one of fairness -- the notion that one side should not be heard to complain about billing practices when it fails to disclose its own billing practices -- is one of evidence as well. Cases, especially complex ones, are highly contextual, and the best evidence available is what others in the same case paid their own attorneys, Armament Systems and Procedures, Inc. v. IQ Hong Kong Limited, 546 F. Supp.2d 646, 653-654 (E.D. WI 2008). In sum, Allen's failure to provide evidence of its own records and its own multiple-attorney staffing practices suggest that M-B-W's fees are in fact reasonable, Id. at 654.

[18] In Armament Systems and Procedures, Inc. v. IQ Hong Kong Limited, 546 F. Supp.2d at 658, the Court entered judgment finding the patent unenforceable due to inequitable conduct, held the case to be "exceptional" under 35 U.S.C. § 285, and ordered the plaintiff to pay over $4.2 million in fees and expenses.

such, it is reasonable to conclude that Allen's failure to provide such very probative evidence is highly suggestive that its own billings do not support its contention that M-B-W's fees were exorbitant, Armament Systems and Procedures, Inc. v. IQ Hong Kong Limited, 546 F. Supp.2d 646, 649 (E.D. WI 2008),[19] *citing* In re General Motors Corp., 110 F.3d 1003, 1033 (4th Cir. 1997).[20]

This is not a typical fee generating case. By its very nature, this was an "extraordinary" case, and only in its twilight did the specter of attorneys' fees emerge. The fact that the actual contemporaneous unredacted billing statements that M-B-W actually paid in the ordinary course of its business strongly implies that they meet market standards as to the reasonableness of the fees charged, Armament, 546 F. Supp.2d at 649-650, *citing* Medcom Holding Co. v. Baxter Travenol Laboratories, Inc., 200 F.3d 518, 521 (7th Cir. 1999). While market forces are not a complete substitute for a judge's independent review of reasonableness under 35 U.S.C. § 285, the need for judicial scrutiny is simply less acute when the fees sought are those that were already billed and paid in the normal course of business, Id.

A loser in an "exceptional" patent case is not entitled to perfection. Where, as here, the prevailing party has obtained excellent results, it is entitled to recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation, Armament, 546

---

[19] Perhaps most damaging for Allen is their failure to disclose any of the costs and attorneys' fees incurred by themselves in this litigation, which would provide a strong basis to gauge the reasonableness of M-B-W's fee petition, Metarante Corporation v. Emigrant Savings Bank, 2009 U.S. Dist. LEXIS 119054 **21-23 (J. P. Stadtmueller, E.D. WI 2009), aff'd. ___ F.3d ___, 2010 U.S. App. LEXIS 18107 ** 61-62 (7th Cir. 2010) [affirming award of $9,998,969.95 in attorneys' fees and costs in a contractual fee-shifting case]. *See also,* Anderson v. Griffin, 397 F.3d 515, 522 (7th Cir. 2005) [a painstaking judicial inspection of fee and cost claims is unnecessary when there is a market constraint on running up excessive expenses]; Sunbeam Products, Inc. v. Homedics, Inc., 2010 U.S. Dist. LEXIS 61290 (W.D. WI 2010) [in a patent infringement case, the Court generally does not "conduct a painstaking inspection of the costs to determine that certain costs are 'reasonable and necessary' to the litigation" -- "market incentives do a better job keeping costs in check than the Court could possibly do after the fact."].

[20] It is not surprising that Allen has failed to present the billing statements of its own attorneys. Allen engaged three different law firms to represent it in this litigation, namely, the Boise, Idaho law firm of Dykas, Shaver & Nipper, LLP; the Jonesboro, Arkansas law firm of Womack, Landis, Phelps & McNeill; and the Milwaukee law firm of Godfrey & Kahn, S.C.

- 14 -
Case 2:07-cv-00390-JPS   Filed 09/21/10   Page 18 of 19   Document 181

F. Supp.2d at 653, *citing* Mathis v. Spears, 587 F.2d 749, 755 (Fed. Cir. 1988) (*quoting* Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S. Ct. 1933, 76 L. Ed.2d 40 (1983)). As with M-B-W's legal staffing, it is not for Allen to second-guess how M-B-W staffs its cases, Armament, 546 F. Supp.2d at 653, fn. 3.[21]

Without any evidence of egregious overbilling or inefficiency, Allen cannot be permitted to second-guess the fees charged by Andrus, Sceales, Starke & Sawall based merely on Allen's *ipse dixit*, Armament, 546 F. Supp.2d at 655.[22]

Respectfully submitted,

s/ George H. Solveson
George H. Solveson, SB#1010395
Aaron T. Olejniczak, SB#1034997
Andrus, Sceales, Starke & Sawall, LLP
100 East Wisconsin Avenue, #1100
Milwaukee, WI 53202
Telephone: 414-271-7590; Facsimile: 414-271-5770
E-mail: georges@andruslaw.com
E-mail: aarono@andruslaw.com
Attorney for Plaintiffs/Counterdefendants

---

[21] This is not a case where the fees sought appear patently outrageous. Allen was represented by two senior partners from two different law firms during the numerous depositions taken by M-B-W at Little Rock, Arkansas, and Boise, Idaho, namely, Atty. Dykas and Atty. Paul McNeill (Allen's attorney who was reprimanded by the Federal Circuit in Allen's case against Bartell). Both senior partners (Dykas and McNeill) entered objections on the record (e.g., Ex. L: Dkt. #172 - Euliss Dep., p. 20). J. Dewayne Allen was also in personal attendance at the numerous Arkansas and Idaho depositions. J. Dewayne Allen also attended the deposition of M-B-W's owner and President, Frank Multerer (Ex. J: Dkt. #172). Allen's objections to Atty. Solveson's preparation of demonstrative exhibits and/or trial aids is also without foundation. Atty. Solveson is not only an experienced trial attorney, but also has an engineering degree and was most suited for working on the highly complex and technical demonstrative exhibits (*see,* Atty. Solveson's Second Declaration submitted herewith). Allen's unsubstantiated assertion is based on its flawed assumption that M-B-W was entitled to only the cheapest, most bare bones defense of its case possible. The fact is that M-B-W was fully entitled to have a partner with whom it was obviously comfortable perform significant amounts of work on its case, Armament, 546 F. Supp.2d at 654-655.
[22] In Microstrategy, 586 F. Supp.2d at 262-263, the Court awarded $138,399.02 for the fee application and briefing.

- 15 -